# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF IDAHO

---

In Re:
**Shawn David Bridger and**
**KayeLynn Dunkley Bridger,**

**Debtors.**

**Bankruptcy Case**
**No. 16-40025-JDP**

---

**R. Sam Hopkins,**

**Plaintiff,**

**vs.**

**Shawn David Bridger,**
**KayeLynn Dunkley Bridger,**
**and Lynn Ladell Bridger,**

**Defendants.**

**Adv. Proceeding**
**No. 16-8033-JDP**

---

**MEMORANDUM OF DECISION**

---

**Appearances:**

Thomas Daniel Smith, SERVICE & SPINNER, Pocatello, Idaho, Attorney for Plaintiff.

Brent T. Robinson, Rupert, Idaho, Attorney for Defendants

MEMORANDUM OF DECISION – 1

Shawn and KayeLynn Bridger.

R. Ron Kerl, Pocatello, Idaho, Attorney for Defendant Lynn Bridger

## I. *Introduction*

In this adversary proceeding, plaintiff R. Sam Hopkins, the chapter 7[1] trustee ("Plaintiff"), seeks summary judgment against defendant Lynn Ladell Bridger ("Defendant") on two of the counts of his complaint. Dkt. No. 32.[2] Both Defendant and debtors Shawn David Bridger and KayeLynn Dunkley Bridger ("Debtors") oppose the motion. Dkt. Nos. 37, 40. The Court heard oral arguments on June 21, 2017, Dkt. No. 43, after which the parties filed additional briefing. Dkt. Nos. 45, 46. Thereafter the Court took the motion under advisement.

The Court has considered the parties' briefs and arguments, as well

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 – 1532, all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001 – 9037, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

[2] To distinguish between them, the Court refers to the docket in the adversary proceeding as "Dkt.", and the docket in the bankruptcy case, *In re Bridger*, 16-40025-JDP, as "BK Dkt."

MEMORANDUM OF DECISION – 2

as the applicable law.  This Memorandum disposes of the motion.  Fed. R.

Bankr. P. 7052; 9014.

## II.  *Relevant Facts*

A.    The $22,248 Transfer to Defendant

On January 13, 2012, Shawn[3] was involved in a serious snowmobile

accident, resulting in the loss of his right arm below the elbow.  Debtors'

2004 Exam Tr., Dkt. No. 33-2 at p. 28.[4]  Following the accident, Shawn was

unable to work for a time.  To assist Debtors financially, beginning in

February or March, 2012, Defendant, Shawn's father, permitted Debtors to

draw upon his line of credit at Key Bank to cover Debtors'  living

expenses.  Dkt. No. 33-2 at p. 28; Lynn Bridger 2004 Exam, Dkt. No. 33-3 at

pp. 7-8.  The line of credit had a zero balance when Debtors began to

access it.  Dkt. Nos. 33-2 at p. 27; 33-3 at p. 9.  By June 29, 2012, the line of

credit had a balance of $17,139.04.  Dkt. No. 1 at ¶ 16.

---

[3] For clarity, the Court will occasionally refer to the parties' first names. No disrespect is intended.

[4] On August 1, 2016, Plaintiff conducted a Rule 2004 examination of Debtors and Defendant.  Dkt. No. 33, ¶¶ 3-4.

MEMORANDUM OF DECISION – 3

Defendant understood that Debtors' draws on the line of credit were to be loans and that Debtors would repay the amounts drawn when they could. Dkt. No. 33-3 at pp. 8-10. However, Defendant also acknowledged that, under the circumstances, he did not expect Debtors to repay the credit line. Dkt. No. 33-3 at p. 51. Defendant did not investigate what Debtors did with the money they got from the bank, nor did he monitor how much money Debtors were using. Dkt. No. 33-3 at pp. 8, 12. Importantly, there was no writing or document evidencing any agreement between Debtors and Defendant concerning the line of credit draws.

Defendant made no payments to Key Bank on the line of credit; when funds became available to them, Debtors would occasionally make a payment to Key Bank on the line of credit. Dkt. No. 33-3 at p. 12.

Following the accident, Shawn retained counsel and filed a lawsuit against the snowmobile manufacturer. On March 30, 2015, Shawn entered into an agreement settling that action. On April 16, 2015, he deposited $66,496, the net proceeds he received from the settlement, into his checking account at Citizens Community Bank ("CCB"). Dkt. Nos. 1 at ¶ 43; 6 at ¶

MEMORANDUM OF DECISION – 4

3; 33-1 at p. 3.  On April 27, 2015, Shawn wrote a check on the CCB account to Defendant for $22,248.  Dkt. Nos. 1 at ¶ 44; 6 at ¶ 3.  In a letter to Plaintiff, Shawn explained that the payment was intended to reimburse Defendant, in part, for the money he had made available to Debtors, as well as to help with his mother's medical bills, as she was seriously ill at that time.  Dkt. Nos. 33-1 at p. 4; 33-2 at pp. 7-8.

On May 19, 2015, Shawn wrote another check on the CCB account for $15,185.89 to Key Bank as a payment on the line of credit.  Dkt. No. 33-2 at p. 10.  A week later, on May 26, 2015, Shawn withdrew $7,500 from the CCB account, and later made other cash withdrawals, because he admittedly was concerned that, given Debtors' financial challenges, the funds in his accounts would be seized.  Dkt. No. 33-2 at pp. 9-10.

From mid-2014 going forward, Debtors began to feel the brunt of their financial woes.  They defaulted on a promissory note owed to the Bank of Commerce, and later that year, several creditors foreclosed on Debtors' primary residence.  In February 2015, Ireland Bank repossessed Debtors' trailer.  In the spring of 2015, several creditors foreclosed on

MEMORANDUM OF DECISION – 5

Debtors' farm and rental real properties.  Suits were filed, and judgments

were obtained, against them by, *inter alia*, the Bank of Commerce

($260,798.56), and D.L. Evans Bank ($240,008.42).

On January 14, 2016, Debtors filed a chapter 7 bankruptcy petition.

In both their original and amended Statement of Financial Affairs

("SOFA"), Debtors failed to disclose the cash transfer to Defendant.  BK

Dkt. Nos. 1; 22.  Instead, only a $6,000 payment to Defendant was

disclosed, with a notation indicating that there was nothing further owed

on the debt to Defendant.  BK Dkt. Nos. 1, p. 66 at ¶ 7; 22, p. 3 at ¶ 7.

Defendant has since returned this $6,000 to Plaintiff.

On November 18, 2016, Plaintiff commenced this adversary

proceeding against Debtors and Defendant in a complaint containing

eleven counts.[5]  Plaintiff's motion for partial summary judgment against

Defendant, filed on May 23, 2017, seeks judgment on only two counts.

Dkt. No. 32.  The first is Count Four, in which Plaintiff seeks to avoid the

---

[5]  The complaint originally also asserted claims against Key Bank as a
defendant.  Plaintiff and Key Bank have since settled those claims, and the action
was dismissed against Key Bank.  Dkt. No. 20.

MEMORANDUM OF DECISION – 6

April 27, 2015, cash payment of $22,248 to Defendant from Shawn's

account at CCB as a fraudulent conveyance under § 548(a)(1)(A) and (B),

or alternatively, as a preference pursuant to § 547(b).

B.    The New Holland Tractor

The second count addressed in Plaintiff's motion deals with Count

Eight of the complaint, which seeks a declaration of the parties' rights in a

tractor.

In approximately 2008, Debtors and Defendant jointly acquired a

tractor.  Defendant traded in a John Deere 4630 tractor he owned which

was worth $24,500, and Debtors took out a loan for $21,125 with Ireland

Bank, and together they purchased a John Deere 7800 tractor for $45,625.

Dkt. No. 33-4 at p. 9.  Debtors paid off the Ireland Bank loan on June 30,

2013.  *Id*. at p. 17.

On September 22, 2014, after Debtors' farm had been foreclosed,

Defendant determined that the John Deere tractor was too large for his

purposes, so he "directed Shawn Bridger to sell or trade the John Deere

7800 tractor for something smaller."  Dkt. No. 33-4 at p. 9.  Shawn

MEMORANDUM OF DECISION – 7

contracted with Valley Implement and Irrigation in Preston, Idaho, and

was able to negotiate the trade of the John Deere straight across for a New

Holland Boomer 50 Tractor.  Dkt. Nos. 33-2. at p. 64; 33-4 at p. 18.  By

Defendant's reckoning, considering  the tractor he traded in to obtain the

John Deere, and given Debtors' loan of $21,125 which they contributed to

the original deal, Debtors own a 46% interest in the New Holland, while he

owns 56%.[6]  Dkt. No. 33-4 at p. 5.   At the time of the trade, the value of the

New Holland was $31,000.  Dkt. No. 33-4 at p. 18.  Debtors insured the

New Holland tractor under the name of one of their corporations.

Previously, on August 30, 2013, Debtors had signed a promissory

note and security agreement with Bank of Commerce in which they

pledged all of their farm equipment as collateral for their loans.  On

January 22, 2015, the Bank of Commerce commenced a state court action

against Debtors to foreclose on the real and personal property securing its

---

[6]  However, Defendant has also stated that "90 percent of [the New
Holland is] mine."  Dkt. No. 33-3 at pp. 62; 64 ("if it comes right down to brass
balls, I own 90 percent and Shawn probably owns 10.").

MEMORANDUM OF DECISION – 8

note, and on May 5, 2015, the state court entered a decree that listed the Bank of Commerce as having a first position lien in the John Deere tractor; it ordered that the tractor be sold according to the security agreement. The Bank of Commerce thereafter reached an agreement with Valley Implement regarding the bank's interest in the John Deere, which had by that time been traded in for the New Holland.

Plaintiff's motion seeks a summary judgment against Debtors and Defendant on Count Eight, in which Plaintiff seeks turnover of the New Holland tractor pursuant to §§ 541(a) and 542(a), as well as the right to sell the tractor free and clear of Defendant's ownership interest under § 363(h). Alternatively, Count Eight alleges that the transfer of any ownership interest in the New Holland Tractor may be avoided as a fraudulent transfer pursuant to § 548(a)(1)(A) and (B), entitling Plaintiff to recover the tractor under § 550(a), or the value of Defendant's avoided interest in the tractor.

### III.  Summary Judgment Standard

Civil Rule 56, made applicable to summary judgment motions in

MEMORANDUM OF DECISION – 9

bankruptcy proceedings by Rule 7056, provides: "The court shall grant

summary judgment if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter

of law."  Civil Rule 56(a).  Once the moving party meets its initial burden,

then the opponent must provide evidence establishing a genuine issue of

material fact for trial.  Civil Rule 56(c); *DeVries v. Clark (In re Clark)*, 14.1

I.B.C.R. 6, 8 (Bankr. D. Idaho 2014); *see also Celotex Corp. v. Catrett*, 477 U.S.

317, 323–24 (1986).

The evidence and any inferences drawn therefrom, must be viewed

in a light most favorable to the non-moving party.  *Thorian v. Baro*

*Enterprises, LLC (In re Thorian)*, 387 B.R. 50, 61 (Bankr. D. Idaho 2008).  It is

not the Court's place to weigh evidence in resolving motions for summary

judgment but, instead, to determine only whether a material factual

dispute exists requiring trial.  *Id.* (citing *Covey v. Hollydale Mobilehome*

*Estates*, 116 F.3d 830, 834 (9th Cir. 1997)).  A dispute is genuine if there is

sufficient evidence for a reasonable finder of fact to hold in favor of the

non-moving party, and a fact is material if it might affect the outcome of

MEMORANDUM OF DECISION – 10

the proceeding. *Far Out Prods., Inc. v. Oskar,* 247 F.3d 986, 992 (9th Cir.

2001); *Boise City/Ada Cty. Housing Auth. v. O'Brien (In re O'Brien),* 11.2

I.B.C.R. 75, 75 (Bankr. D. Idaho 2011).

### IV. Analysis and Disposition

<u>A.</u>     <u>The Cash Transfer to Defendant</u>

Plaintiff contends he may avoid the transfer of the $22,248 to

Defendant from Debtors under § 548(a) as a constructively fraudulent

transfer because Debtors did not receive reasonably equivalent value for

the transfer, or, alternatively, if the money was transferred to Defendant to

repay a loan, as a preference under § 547(b).

Defendant filed an opposition to Plaintiff's motion, in which Debtors

joined.  Dkt. Nos. 37, 40.  Debtors and Defendant contend that the $22,248

Debtors paid to Defendant came from the proceeds of Shawn's personal

injury settlement, and that those funds were therefore exempt under Idaho

Code § 11-604(1)(c), or at least, that there is a question of fact about

whether the funds were exempt as reasonably necessary for their support.

The exemption statute Defendant and Debtors invoke provides that "[a]n

MEMORANDUM OF DECISION – 11

individual is entitled to exemption of the following property to the extent

reasonably necessary for the support of him and his dependents: . . . (c)

proceeds of insurance, a judgment, or a settlement . . . ." Since there is no

dispute that Debtors received a large amount of funds from the settlement

with the snowmobile manufacturer, nor that Debtors were struggling at

the time to pay their living expenses as a result of the accident, it is

plausible that the settlement funds were indeed exempt.

However, the same state exemption statute further provides that

"[t]he exemption[] allowed by this section shall be lost immediately upon

the commingling of any of the funds or amounts described in this section

with any other funds." Idaho Code § 11-604(3). As relevant here, Shawn

admitted that "[o]n April 16, 2015, I deposited the Net Settlement Proceeds

into my checking account at Citizens Community Bank . . . . At that time

there was a total of $5,804.94 in that account." Aff. of Shawn Bridger, Dkt.

No. 39 at ¶ 4. This testimony is corroborated by the CCB account

statement. *Id*. at p. 7.

Neither the parties, nor the Court, are aware of any case law

MEMORANDUM OF DECISION – 12

interpreting Idaho Code § 11-604(3). While there are cases contrasting that provision with other exemption statutes containing no similar prohibition on commingling funds, none of those decisions actually applied the commingling provision directly. However, the absence of case law is of no moment. The statute unambiguously mandates that any exemptions arising under Idaho Code § 11-604 "shall be lost *immediately* upon the commingling . . . with *any other funds*". Idaho Code § 11-604(3) (emphasis supplied). Because the Idaho Legislature has clearly spoken, this Court is not free to disregard its directive. Accordingly, even assuming Debtors are able to trace the funds used to pay Defendant through their bank accounts, the exempt status of those funds was lost immediately when they were deposited and commingled with Debtors' other funds in the CCB account. Because the funds were no longer exempt when paid by Debtors to Defendant, they are subject to reach by Plaintiff, assuming he can establish the other elements for avoidance.

In this respect, Plaintiff contends that he may avoid the transfer of the $22,248 to Defendant as a constructively fraudulent transfer because,

MEMORANDUM OF DECISION – 13

Plaintiff argues, Debtors were insolvent when they paid Defendant, and

they did not receive reasonably equivalent value in return for that

payment.

Section 548(a)(1)(B) provides, in relevant part:

The trustee may avoid any transfer . . . of an interest of the
debtor in property . . . that was made or incurred within 2
years before the date of the filing of the petition, if the debtor
voluntarily or involuntarily—
. . . . .
    (B)(i) received less than a reasonably equivalent value in
    exchange for such transfer or obligation; and

        (ii)(I) was insolvent on the date that such transfer
        was made or such obligation was incurred, or
        became insolvent as a result of such transfer or
        obligation. . . .

To avoid a transfer under this provision, Plaintiff must demonstrate that 1)

there was a transfer of Debtors' property within two years of the filing of

their bankruptcy petition, 2) that Debtors received less than reasonably

equivalent value in exchange for the transfer, and 3) that Debtors were

insolvent on the date of the transfer, or the transfer caused them to become

insolvent. *Gugino v. Rowley (In re Floyd)*, 540 B.R. 747, 758 (Bankr. D. Idaho

MEMORANDUM OF DECISION – 14

2015) (citing *Jordan v. Kroneberger (In re Jordan)*, 392 B.R. 428, 440 (Bankr. D. Idaho 2008)).  Plaintiff bears the burden of proving all § 548(a)(1)(B) elements.  *Crawforth v. Wheeler (In re Wheeler)*, 444 B.R. 598, 605 (Bankr. D. Idaho 2011); *Murietta v. Fehrs (In re Fehrs)*, 391 B.R. 53, 73 (Bankr. D. Idaho 2008).

Here, there is no question that the $22,248 in settlement funds were Debtors' property, nor that the money was transferred to Defendant via check.  The first § 548(a) avoidance requirement is therefore met.  The third element is also not in question because Debtors were clearly experiencing financial distress and had been receiving Defendant's financial assistance for several years; they had already endured a number of foreclosures, and there were large money judgments pending against them.  Indeed, according to Debtors' SOFA in the bankruptcy case, their obligations included a $450,000 foreclosure deficiency judgment in favor of D.L. Evans Bank entered in December 2014, and a $225,000 foreclosure deficiency judgment in favor of D.L. Evans bank entered in April 2015 – the same month the transfer was made.  As of the date of the bankruptcy filing,

MEMORANDUM OF DECISION – 15

which occurred only a few months after the transfer, Debtors listed

$54,440.32 in assets and $2,208,443.28 in liabilities.  On this record, the

Court concludes there is no factual dispute that Debtors were insolvent at

the time of the transfer to Defendant.

Finally, to obtain a summary judgment, Plaintiff must establish,

beyond dispute, that Debtors did not receive reasonably equivalent value

for the transfer of the $22,248 to Defendant.  The Court employs a two-step

process to determine whether "reasonably equivalent value" was received.

First, the Court must determine what Debtors received in exchange for the

transfer.  *Hopkins v. Crystal 2G Ranch, Inc. (In re Crystal)*, 513 B.R. 413, 419

(Bankr. D. Idaho 2014) (citing *Rainsdon v. Kirtland (In re Kirtland)*, 12.1 IBCR

9, 12 (Bankr. D. Idaho 2012)); *see also In re Jordan*, 392 B.R. at 441.  Next,

Plaintiff must prove that the value received was not reasonably equivalent

to what Debtors gave in exchange.  *Id.*

On this point, recall, at the time of the transfer to Defendant,  Shawn

indicated that the money was to repay his father for the use of the line of

credit, and to help cover his mother's medical expenses.  For purposes of

MEMORANDUM OF DECISION – 16

§ 548(a), "value" is defined to mean "property, or satisfaction or securing

of a present or antecedent debt of the debtor." § 548(d)(2). Whether a fair

economic exchange has occurred is determined by the Court's analysis of

"all the circumstances surrounding the transfer in question." *In re Jordan*,

392 B.R. at 441.

While the Court appreciates that some sort of "value" was received

by Debtors in exchange for the cash payment, it was not the type of value

that may be reliably measured in a bankruptcy case. Although there was

no writing requiring him to do so, and Defendant had no realistic hopes

that it would occur, Debtor chose to repay Defendant for some of the funds

that had been gifted to him and to help pay for some of his mother's

medical expenses. While the payment from Debtors to Defendant may

have been a good and compassionate gesture, the Court and Plaintiff are

bound by the strictures of the Bankruptcy Code. That being said, the Court

must look to the value Debtors received, if any, from the perspective of

Debtors' creditors. *In re Fehrs*, 391 B.R. at 74 (citing *Frontier Bank v. Brown*

*(In re N. Merch., Inc.)*, 371 F.3d 1056, 1059 (9th Cir. 2004) (the "primary

MEMORANDUM OF DECISION – 17

focus . . . is on the net effect of the transaction on the debtor's estate and the funds available to the unsecured creditors.")).  "The common thread expressed in the case law instructs that the Court must have a quantifiable basis for its valuation, although the information available to the Court need not be precise."  *In re Floyd*, 540 B.R. at 758 (quoting *Gugino v. Ortega (In re Pierce)*, 428 B.R. 524, 528-29 (Bankr. D. Idaho 2010)).  "The economic value must be real and quantifiable."  *Hasse v. Rainsdon (In re Pringle)*, 495 B.R. 447, 463 (9th Cir. BAP 2013).

From the perspective of their creditors, Debtors gave cash to Defendant, but Debtors received no corresponding real, quantifiable economic value in return.  The difficulty for Defendant and Debtors here is that, while there is some history of Defendant occasionally advancing funds to Debtors, and Debtors eventually repaying him, there is simply nothing legally binding about their arrangement.  This was likewise true concerning the advances Defendant authorized Debtors to take on the credit line following Shawn's unfortunate accident.  While, arguably, it may have been understood that Debtors would repay Defendant if and

MEMORANDUM OF DECISION – 18

when they could, there was no writing to evidence the arrangement, and

no definite agreed-upon payment terms, no default terms, and no specified

remedy for any default.  Instead, the record demonstrates that, in all

aspects, Defendant's help extended to Debtors was a parent's loving and

generous gift.  As commendable as the parties' actions may have been,

their lack of formality has consequences in this bankruptcy case.  Simply

put, the undisputed facts indicate that no value was received by Debtors to

offset the $22,248 payment.  As a result, the Code dictates that a

constructively fraudulent, and avoidable, transfer occurred.[7]

B.    The New Holland Tractor

The Court determines that it should also grant Plaintiff a summary

judgment for turnover of the tractor, as well as Plaintiff's right to sell the

tractor free and clear of Defendant's interest.

Apparently because it is undisputed that Debtors own some interest

---

[7] Because the Court determines that Plaintiff is entitled to a summary
judgment avoiding the payment as a constructively fraudulent transfer, it need
not consider Plaintiff's alternative claim for avoidance of the transfer as a
preference under § 547.

MEMORANDUM OF DECISION – 19

in it, Defendant has conceded that Plaintiff has the "right to take possession of and sell the New Holland Tractor". Dkt. No. 37 at p. 7. The Court agrees that, under § 541(a), the tractor is property of the bankruptcy estate, and that under § 542(a), anyone in possession of the tractor is required to turn it over to the trustee.[8]

In addition, under § 363(h), even assuming Defendant holds some interest in the tractor, Plaintiff "may sell both the estate's interest, . . . and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety" so long as certain conditions are met. Those § 363(h) conditions are indeed satisfied in this case.

First, partition of the property must be impracticable, which, given the nature of this asset, is certainly the case here – no one suggests that the tractor can be physically divided.

---

[8] On this record, it is unclear whether Debtors or Defendant have possession of the tractor at this time.

MEMORANDUM OF DECISION – 20

Second, the sale of only the estate's undivided interest in the tractor will realize significantly less than the sale of the entire property. The Court concludes that this requirement is also met as it would seem virtually certain that Plaintiff could not liquidate Debtors' undivided interest in the tractor for a price even remotely equivalent to that which could be obtained for full, unrestricted ownership of the tractor.

Next, Plaintiff must prove that the benefit of a sale to the estate outweighs any detriment to the interests of the co-owner. Here, the benefit to the estate of a sale is represented by the cash proceeds of the sale. However, the detriment to a co-owner of a sale may implicate nonfinancial considerations. *Hopkins v. Wright* (*In re Labbee*), 550 B.R. 854, 859 (Bankr. D. Idaho 2016). Because Debtor and Defendant paid $31,000 for the tractor when they jointly acquired it, and even though it likely depreciated in the intervening years, Plaintiff plausibly estimates that the New Holland tractor will likely generate several thousand dollars to the estate if sold. That outcome must be contrasted with any potential detriment of the sale to Defendant. The testimony in this record is consistent that all of the

MEMORANDUM OF DECISION – 21

tractors over the years, including the New Holland, have generally been located at Debtors' home and used primarily for their benefit. Moreover, Debtors have shared the unfortunate news with the Court that Defendant suffers from Parkinson's disease, and therefore will likely be unable to use the tractor going forward. While admittedly based on inferences from the evidence in the record, the Court comfortably concludes that there is no genuine issue of material fact that the benefit of selling the tractor to the estate outweighs Defendant's interest in it.

Finally, under § 363(h)(4), Plaintiff must demonstrate that the tractor is not used for energy production purposes, a proposition that is not contradicted by anything in the record and otherwise seems evident.

Because Plaintiff has, without genuine factual dispute, established all of the elements under § 363(h), Plaintiff may sell the New Holland tractor free and clear of Defendant's interest in it.

Defendant requests that the Court adjudge that he owns a 56% undivided interest in the New Holland tractor before it authorizes the Plaintiff to sell it. However, the record does not support that request.

MEMORANDUM OF DECISION – 22

Instead, fact issues remain concerning quantification of the parties' relative

ownership interests in the tractor, as shown by Defendant's own

statements, who at one time suggested that he owns 90% of the tractor.

Moreover, there is other evidence in the record that Debtors may have

made some payments on one of the predecessor tractors, perhaps the John

Deere.  If so, Debtors' ownership interest could potentially be greater than

44%.  At this juncture, while the Court will grant summary judgment as to

Plaintiff's right to take possession of the New Holland tractor and to sell it,

unless the parties agree otherwise, further proceedings are necessary to

determine the disposition of any sale proceeds.

### Conclusion

The $22,248 transfer from Shawn to Defendant is avoidable as a

constructively fraudulent transfer under § 548(a)(1)(B), and Plaintiff is

entitled to summary judgment on Count Four of his complaint.

Plaintiff is entitled to turnover of the New Holland tractor under

§ 542(a), and he may sell it under § 363(h) free and clear of Defendant's

interest.  Thus summary judgment will also be granted to Plaintiff on

MEMORANDUM OF DECISION – 23

Count Eight.  No ruling will be made at this time concerning the parties'

relative rights to any sale proceeds.

The disposition of all other issues raised in this action will require

further proceedings.  A separate order will be entered.

Dated:  August 30, 2017



_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION – 24